UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TAMMY K. ELLER, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) ) Case No. 1:23-cv-00239-SLC |
| COMMISSIONER OF SOCIAL SECURITY, s**ued as Martin O'Malley,** *Commissioner of Social Security*,[1] | ) ) ) ) ) |
|     Defendant. | ) ) |

## OPINION AND ORDER

Plaintiff Tammy K. Eller appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB"). (ECF 1).[2] For the following reasons, the Commissioner's decision will be AFFIRMED.

## I. FACTUAL AND PROCEDURAL HISTORY

Eller first applied for DIB and Supplemental Security Income in March 2011, alleging disability as of January 2, 2009. (Administrative Record ("AR") 34, 98).[3] Her claim was denied initially and upon reconsideration (AR 98). On September 29, 2011, an administrative law judge ("ALJ") held a hearing, taking testimony from Eller, who was represented by counsel, and a vocational expert (*id.*), and on September 20, 2012, rendered an unfavorable decision to Eller,

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023, and thus, pursuant to Federal Rule of Civil Procedure 25(d), he is automatically substituted for Kilolo Kijakazi in this case. *See Melissa R. v. O'Malley,* No. 1:22-cv-02404-TAB-TWP, 2023 WL 8866397, at *1 n.1 (S.D. Ind. Dec. 22, 2023).

[2] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. (ECF 7, 8).

[3] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed at the top center of the screen when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

concluding that she was not disabled because, despite the limitations caused by her impairments, she could perform her past relevant work, or in the alternative, she could perform jobs that exist in significant numbers in the national economy (AR 95-107). After Eller withdrew her request for review, the Appeals Council dismissed the same on November 20, 2013. (AR 112-13).[4]

Eller filed the present claim for DIB on October 12, 2013, alleging disability since August 1, 2010, which she later amended to September 21, 2012. (AR 34, 60-61; *see* AR 1609; ECF 12 at 1).[5] This claim was denied initially and upon reconsideration. (AR 114-33, 137-48). On September 30, 2015, an ALJ held a second hearing, taking testimony from Eller, who was again represented by counsel, and a vocational expert. (AR 54-94). On November 10, 2015, the ALJ rendered an unfavorable decision to Eller, concluding that she was not disabled because, despite the limitations caused by her impairments, she could perform her past relevant work, or in the alternative, she could perform jobs that exist in significant numbers in the national economy. (AR 31-48). The Appeals Council denied Eller's request for review (AR 8-14), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Eller appealed this denial to the Court on April 12, 2017, which remanded the case for further administrative proceedings on July 16, 2018. (AR 959-70).

On September 18, 2019, on remand, an ALJ conducted a third hearing at which Eller was represented by counsel and a vocational expert testified (AR 753-81, 1740-68), and on November 18, 2019, rendered an unfavorable decision to Eller, concluding this time that she was not disabled because she could perform jobs that exist in significant numbers in the national

---

[4] At a subsequent hearing with an ALJ on November 10, 2015, Eller requested that this claim be reopened but the ALJ denied the request. (AR 1609).

[5] Eller states in her brief that she filed a DIB claim in February 2014 (ECF 12 at 1), but it appears to be the date the Social Security Agency confirmed her application, which was filed October 18, 2013 (AR 198).

economy despite the limitations caused by her impairments (AR 730-45). Eller appealed this second denial to the Court, which again remanded the case for further administrative proceedings on April 14, 2021. (AR 1724-32).

On November 9, 2022, an ALJ held another hearing, at which Eller, who continued to be represented by counsel, and a vocational expert testified. (AR 1637-99). On February 20, 2023, the ALJ again concluded that Eller was not disabled because, despite the limitations caused by her impairments, she could perform jobs that exist in significant numbers in the national economy. (AR 1605-28). Rather than appealing her case to the Appeals Council, Eller elected to file an appeal with the district court. *See* 20 C.F.R. § 404.984(d); (ECF 12 at 2; ECF 19 at 2). Eller was last insured for DIB on December 31, 2013 (AR 1612), and thus, she had to establish that she was disabled as of that date for purposes of her DIB application. *See Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997) (explaining that a claimant must establish that he was disabled as of his date last insured in order to recover DIB).

On June 9, 2023, Eller filed a complaint in this Court appealing the Commissioner's final decision. (ECF 1). Eller's argument on appeal is that the ALJ improperly evaluated and rejected evidence supporting that she needs additional unscheduled breaks. (ECF 12 at 10-11).

As of the ALJ's February 20, 2023, decision, Eller was fifty-nine years old (AR 198, 1626); had a limited education (AR 1626); and had no past relevant work (*id.*). Eller alleged disability due to the following: major depressive disorder, post-traumatic stress disorder (PTSD), asthma and chronic obstructive pulmonary disease (COPD), and obesity. (ECF 12 at 2).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation and quotation marks omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

## III. ANALYSIS

### *A. The Law*

Under the Act, a claimant seeking DIB must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether she has a severe impairment, (3) whether her impairment is one that the Commissioner considers conclusively disabling, (4) whether she is incapable of performing her past relevant work, and (5) whether she is incapable of performing any work in the national economy. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1520.[6] "[A]n affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled." *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). "A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Id.* (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### B. The Commissioner's Final Decision

In the ALJ's February 20, 2023, decision, the ALJ observed at the outset that Eller was last insured for DIB on December 31, 2013. (AR 1612). At step one of the five-step analysis, the ALJ noted that Eller did not engage in substantial gainful activity since her alleged onset date of September 21, 2012, through her date last insured of December 31, 2023. (*Id.*). At step two, the ALJ found that Eller had the following severe impairments through her date last insured: asthma/COPD; obesity; depressive disorder; major depressive disorder, recurrent, moderate;

---

[6] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks she can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. *Id.* § 404.1520(e).

anxiety disorder; and PTSD. (AR 1614).[7] At step three, the ALJ concluded that Eller did not have an impairment or combination of impairments severe enough to meet or equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, through her date last insured. (*Id.*).

The ALJ assigned Eller the following RFC as of her date last insured:

> [T]he claimant [has] the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally climb stairs or ramps, stoop, kneel, crouch, or crawl; can never climb ladders, ropes, scaffolds, or balance, as that term is used vocationally. Can occasionally reach overhead with the left, nondominant, upper extremity. Occasional exposure to extreme heat, extreme cold, fumes, dusts, odors, gases, humidity, and poor ventilation. Must avoid all exposure to dangerous moving machinery and unprotected heights. Work with an option to change positions no more frequently than every 30 minutes, while remaining on task. With work that can be learned in 30 days, or less, with simple routine tasks; simple work related decisions, routine work-place changes. Is able to remain on task, persist, and maintain pace in two-hour increments, but with no tandem tasks, and no production rate pace work, such as on an assembly line. With occasional interaction with the general public.

(AR 1623-24).

The ALJ determined at step four that Eller had no past relevant work. (AR 1626). However, at step-five, given Eller's age, education, work experience, and RFC, the ALJ concluded that through her date last insured Eller could perform a significant number of unskilled, light-exertional jobs in the national economy, including collator operator, classifier, office helper, and mail clerk. (AR 1626-27). Therefore, Eller's application for DIB was denied. (AR 1627).

## C. Need for Unscheduled Breaks

On appeal, Eller argues the ALJ erred in her analysis pertaining to her need for unscheduled breaks and absences. Specifically, Eller states that the ALJ committed error when she relied on the fact that she showed improvement, that there was a lack of complaints of

---

[7] The ALJ further found that Eller had the following nonsevere impairments through her date last insured: thoracic degenerative disc disease, lumbar degenerative disc disease, elbow tendinitis, and left shoulder pain. (AR 1612).

nightmares and thoughts of abuse in the record, and that the evidence did not show the durational one-year requirement was met. (ECF 12 at 11).[8] Eller urges the Court to find that she would require one or two unscheduled breaks per month and absences due to her depressive symptoms, PTSD, nightmares, and intrusive thoughts, a conclusion she advances is consistent with neutral medical expert Jeffrey Andert, Ph.D.'s testimony during the November 9, 2022, hearing, and Hani Ahmad, M.D.'s September 16, 2018, assessment. (ECF 12 at 11).

1. The ALJ's Analysis

The ALJ first analyzed Eller's need for unscheduled breaks at step three. She explained that Dr. Ahmad, who had begun treating Eller five months before her date last insured, opined in September 2019 that between September 21, 2013, and December 31, 2013, Eller would miss more than four workdays per month due to her impairments or treatment. (AR 1618). She also cited Dr. Andert's testimony that Eller's impairments would cause her to have one to two unscheduled breaks per month. (AR 1622).

Despite finding Dr. Andert's opinion generally more persuasive than Dr. Ahmad's,[9] the ALJ opined that no weight was given to either physician's opinion on the issue of unscheduled breaks because "the record does not include evidence that supports Dr. Ahmad's opinion about the number of absences the claimant would experience in a month," and that "the record does not confirm the claimant would require one to two unscheduled breaks per month, as Dr. Andert

---

[8] Plaintiff initially argued that the ALJ also erroneously relied on Eller's activities of daily living (*id.*) but subsequently conceded that point because the Commissioner "claims that the ALJ did not discount the opinion of Dr. Andert on daily living activities." (ECF 20 at 3).

[9] At the outset, the ALJ noted that "Dr. Andert's medical expert testimony received more weight because Dr. Andert's opinions were more consistent with the evidence described during the relevant period, as well as function reports completed by the claimant and her sister for this claim, just several weeks after the date last insured expired." (AR 1618). She noted Dr. Andert had based his opinion upon a review of the entire medical evidence of record and "provided explanations about why the limitations he assigned to the paragraph B and C criteria were supported by the evidence, and the undersigned agrees with Dr. Andert's assessments more than Dr. Ahmad's opinions." (AR 1618-19).

indicated." (AR 1622-23). The ALJ elaborated that "no single piece of information (including test results) can establish the degree of limitation of an area of mental functioning," and therefore rejected both opinions on the matter. (AR 1618, 1620).

The ALJ first concluded that Dr. Ahmad's opinions that Eller was only moderately limited in her ability to adapt or manage herself while finding that she would miss more than four days of work per months appeared "internally inconsistent," and were not "supported by an explanation that discussed his own clinical findings from that time." (AR 1622). She secondly described Dr. Andert's opinion, which she found did not support Dr. Ahmad's assessment, relaying the following:

> During the hearing, counsel asked Dr. Andert if he was able to formulate an opinion about the frequency of absences related to the claimant's mental health impairments, to which Dr. Andert replied there was limited data that would allow for prediction. Dr. Andert added the best way to predict future behavior is past behavior, and the claimant did not have any documented work setting that he found that would allow him to predict how she might respond in a structured 40 hour per week environment. Dr. Andert added the claimant participated in healthcare appointments over several years, but he also admitted that healthcare appointments were less frequent than a daily work expectation. Additionally, Dr. Andert noted that relying on the nature of the claimant's impairments, she would have one to two unscheduled breaks per month.
>
> Counsel also asked Dr. Andert if he noted the report where the claimant attempted to work in a factory for one month, but she could not handle it and missed too much work. While Dr. Andert did not recall seeing that, it is discussed within a remote August 2011 treatment record, and at that time, the claimant said her employer told her she missed too much work due to her medical appointments not that she could not handle it. It appears this employment was further discussed in December 2011, when the claimant reported her last job was in August 2011 and she could not handle it due to her back pain.

(*Id.* (citations omitted)).

Regarding Eller's August 2011 factory job, the only documented time during which Eller was working, the ALJ concluded that Eller's attempt at gainful employment did not end due to interference from her mental impairments, but rather ended due to her back pain. (*Id.*). Overall,

the ALJ found that the record did not support Dr. Ahmad's or Dr. Andert's opinions about the number of absences Eller would experience in a month. (AR 1622-23).

Turning to the RFC assessment, the ALJ reiterated her analysis pertaining to Eller's absences. She first relayed Eller's allegations, including that Eller believed she would have needed at least two or three extra breaks per month, she reported recurring thoughts of abuse at least four times per week, and said she blacked out while shopping and left. (AR 1624).

The ALJ rejected greater limitations in the need for additional breaks or off-task behavior due to thoughts of abuse at least four times per week, "because they are not established by the record." (AR 1625). The ALJ listed several daily activities Eller engaged in, such as using public transportation, shopping in stores once a week, not having problems getting along with people, and before the period at issue, working as a cashier and caring for her mother. (*Id.*).

The ALJ also discounted Eller's symptoms because the medical record showed she improved and responded well to the medication and mental health treatment. (AR 1624-25). Specifically, she noted that in October 2012, Eller's nightmares had resolved with Prozac and her mood was okay after taking Pristiq. (AR 1624; *see* AR 435). Eller's provider noted Seroquel worked in June 2013, and again "several months later," when it was reported Eller was sleeping better, her depression was better, and her anxiety was stable. (AR 1624-25 (citing AR 385, 426-27)). While Eller reported she started having bad dreams from childhood trauma in December 2013, her depression was stable. (AR 1625 (citing AR 545-47)). The ALJ also noted that Dr. Andert testified Eller's symptoms waxed and waned, and the ALJ qualified his testimony as "consistent with the previously described medical records, including evidence that he addressed during the hearing, from February 2014, . . . where the claimant was doing well and did not report any psychiatric problems." (*Id.* (citation omitted)). She concluded "while the claimant

9

reported nightmares in December 2013, she did not report they continued during a two-month follow-up." (*Id.*). Accordingly, the ALJ did not assign any greater limitations relating to Eller's need for unscheduled breaks.

2. Improvement and Medical Record

Eller first challenges the ALJ's conclusion that she improved. She states improvement is not necessarily inconsistent with Dr. Andert's opinion, nor does it give an accurate description of her symptoms and ability to work. (ECF 12 at 11). Eller's perfunctory argument, however, is not persuasive. As explained by the ALJ, the only instance between September 2013 and February 2014 during which Eller complained of worsening nightmares was her December 2013 reports. However, in February 2014, she was no longer reporting nightmares and continued to report her medication was working and her depression, sleep, and mood were better. (AR 542); *see Sommer v. Saul*, No. 1:19-cv-00492-JVB-SLC, 2020 WL 6809260, at *3 (N.D. Ind. Oct. 30, 2020) ("The records generally reflect that Sommer, who was accompanied by his mother to appointments, reported that he was "'doing good' with no depression, anxiety, hallucinations, delusions, or paranoia." (citations omitted)). Eller offers no other instance in which she complained of nightmares which would affect her need for unscheduled breaks *during the relevant period*.[10]

As this Court has often emphasized, "the primary responsibility for producing medical evidence demonstrating the severity of impairments remains with the claimant." *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) (citing 20 C.F.R. § 416.912(c)). "It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove [her] claim of disability." *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) (citing 20 C.F.R. § 404.1512(c); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)); *see Outlaw v. Astrue*,

---

[10] Eller argues that evidence after the date last insured, which reflects that she experienced more nightmares, should have been considered by the ALJ. (ECF 12 at 13). As will be discussed below, this argument is not convincing.

412 F. App'x 894, 898 (7th Cir. 2011) ("The ALJ needed only to include limitations in [the] RFC determination that were supported by the medical evidence and that the ALJ found to be credible." (citations omitted)).

Beyond documenting Eller's progress, the ALJ also cited the lack of reports of nightmares—another point Eller disputes. She contends the ALJ improperly drew inferences about her infrequent complaints of nightmares, asserting that "the main reason for the lack of evidence was that she lost mental health services." (ECF 12 at 11-12). She states she began treatment at Bowen Center but started visiting Matthew 25 when she lost her services, and that the latter facility "does not have specialized mental health services." (*Id.* at 12). Accordingly, she states that "[t]he so-called lack of complaints is largely due to the different level and frequency of treatment." (*Id.*). She also points to the fact that upon her return to the Bowen Center, "the record is clearer on the degree of her limitations." (*Id.*). This argument, too, is unconvincing.

It is true an ALJ must consider the reasons for a claimant's failure to seek treatment. *See Morrison v. Saul*, 806 F. App'x 469, 474 (7th Cir. 2020) ("[A]n ALJ first must consider the claimant's explanations for [a failure to pursue treatment]."). However, Eller misstates the ALJ's analysis of her infrequent complaints of nightmares. The ALJ did not conclude that Eller failed to seek treatment for complaints of nightmares, but rather, that when Eller did seek treatment, she did not report experiencing nightmares. (AR 1623 ("What [records from October 2012 and September 2013] do not describe are complaints about nightmares and thoughts of abuse that occurred at least four times per week which would seem likely to be mentioned if occurring with such frequency.")). Eller's argument is also unavailing because, while it may be true Matthew 25 does not specialize in mental health, the record reflects that Eller discussed her various mental health issues during her visits there several times. (*See* AR 423 (October 23, 2013, medical note

stating "Seroquel helps mood [and] sleep."); AR 427 (June 26, 2013 note stating "Insomnia - Bowen [Center] has started Seroquel – working"); AR 435 (medical note reflecting she reported her mood was ok on Pristiq, and that nightmares resolved off Prozac on October 16, 2012); AR 438 (reporting that Bowen Center changed Prozac to Pristiq and that she was doing well on June 19, 2012)). Contrarily to Eller's argument, the record shows she repeatedly reported on her mental health conditions, including the frequency of her nightmares. Therefore, the ALJ did not err in concluding that she was improving; nor did she err in considering Eller's lack of documented nightmares in assessing Eller's need for unscheduled breaks or absences.

Generally, the ALJ properly analyzed Dr. Ahmad's and Dr. Andert's opinions. She noted that Dr. Ahmad had not articulated the reasons why he found her to require four or more unscheduled breaks a month, which further justifies the ALJ's discounting of the cursory opinion. *Luster v. Astrue*, 358 F. App'x 738, 740 (7th Cir. 2010). As for the ALJ's treatment of Dr. Andert's testimony, the Court does not see her conclusion as unreasonable given the unspecified nature of his opinion. To reiterate, the ALJ examined Dr. Andert's testimony that he had "limited data that would allow for prediction" of Eller's frequency of absences relating to her mental health impairments. (AR 1622). She discussed Dr. Andert's statements that "the best way to predict future behavior is past behavior," but that Eller did not have "any documented work setting that he found that would allow him to predict how she might respond in a structured 40 hour per week environment." (*Id.*). For example, according to Dr. Andert, the healthcare appointments she attended over several years were less frequent than a daily work expectation, and thus, not a proxy for determining the frequency of her absences. (*Id.*). In the end, Dr. Andert determined Eller would have one to two unscheduled breaks per month based only on the nature of Eller's impairments, which the ALJ found unsupported by the record. (AR 1622-23).

This ambivalent opinion is reflected in Dr. Andert's testimony. As the Commissioner explains, Dr. Andert testified that there was "limited data" that would allow him to predict the frequency of absences Eller would experience as it relates to her mental impairments, that "*perhaps*" she would need unscheduled breaks once or twice per month, that "there is the *possibility* that [Eller] would require unscheduled breaks," that he "wish[ed] there were more evidence" to determine such frequency but that it would amount to "*[p]erhaps* one to two times per month." (AR 1651, 1657 (emphasis added)).

The ALJ also contrasted Dr. Andert's opinion with Dr. Ahmad's conclusion that Eller would have four or more unscheduled breaks, highlighting the discrepancy between both opinions, but that in the end, neither opinion was based on the medical record. Thus, when the ALJ was "presented with conflicting medical opinions, [she] fulfilled [her] 'duty to resolve that conflict.'" *Bremer v. Comm'r of Soc. Sec.*, No. 1:22-cv-00272-SLC, 2023 WL 6284630, at *10 (N.D. Ind. Sept. 27, 2023) (citing *Vrooman v. Kijakazi*, No. 20-2939, 2021 WL 3086196, at *2 (7th Cir. July 21, 2021)); *see Barrett v. Saul*, 822 F. App'x 493, 497 (7th Cir. 2020) (affirming the ALJ's decision where the ALJ "credited the opinions of the reviewing consultants who reviewed these same records but nonetheless concluded that [the claimant] was capable of light work, with limitations"). "Even if reasonable minds could differ on the weight to give the conflicting records, [the Court] will not substitute the ALJ's judgment with [its] own." *Vrooman*, 2021 WL 3086196, at *2 (citations omitted).[11]

---

[11] As such, the ALJ provided at least two valid reasons—lack of supportability and inconsistency, 20 C.F.R. § 404.1520c(c)—for discounting these medical opinions. "[T]he factors of supportability . . . and consistency . . . are the most important factors [the ALJ must] consider when [she] determine[s] how persuasive [she] find[s] a medical source's medical opinions or prior administrative medical findings to be." (alteration in original) (quoting 20 C.F.R. §§ 404.1529c(b)(2), 416.920c(a)).

Given the foregoing, the ALJ, in turn, sufficiently supported her conclusion that Dr. Ahmad's and Dr. Andert's opinions on the need for unscheduled breaks were not justified. "The ALJ need not provide a written evaluation of every piece of evidence, but need only 'minimally articulate' [her] reasoning so as to connect the evidence to [her] conclusions." *Knox v. Astrue*, 327 F. App'x 652, 657-58 (7th Cir. 2009) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)); *see also Catchings v. Astrue*, 769 F. Supp. 2d 1137, 1146 (N.D. Ill. 2011). The ALJ did so here. In sum, the ALJ's decision is reasonable, consistent with the record, and does not rise to a reversible error. *See Warrior v. Kijakazi*, 583 F. Supp. 3d 1191, 1204 (E.D. Wis. 2022) ("[The Court's] role is limited; [it] must evaluate whether substantial evidence supports the ALJ's assessment and affirm if it does, even if some of the ALJ's findings are 'a bit harsh.'") (citing *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008)).

3. Evidence Postdating Eller's Date Last Insured

Lastly, Eller urges the Court to find she was disabled based on evidence postdating her date last insured, December 31, 2013. In her decision, the ALJ found that Eller was not disabled from August 1, 2010, through her date last insured, December 31, 2013. (AR 1610, 1612).[12] At the step-three analysis, the ALJ acknowledged Eller's testimony that she had required emergency treatment for mental health issues in 2014 and had been admitted for twenty-four hours at an inpatient treatment facility, but that those events occurred after her date last insured. (AR 1615). She also cited a February 2014 Bowen Center note reflecting that Eller reported her sleep and mood were better and that she did not complain about nightmares and was doing well during a follow-up. (AR 1621 (citing AR 542-44)). In crafting the RFC, the ALJ again considered this

---

[12] The ALJ clarified, however, that "the actual period at issue in this decision begins on September 21, 2012," given the procedural history of Eller's applications. (AR 1608-09 ("[T]he [ALJ's] decision on September 20, 2012 (Ex. B2A) is administratively final (20 CFR 404.955).").

same evidence given that Dr. Andert's testimony "appear[ed] consistent with previously described medical records, including evidence that he addressed during the hearing, from February 2014 . . . ." (AR 1625).[13]

Eller objects to the ALJ's lack of consideration of medical records dated April 2014 and after, arguing that those records support a conclusion contrary to the ALJ's. But as stated earlier, Eller had to establish that she was disabled as of her last insured date for purposes of her DIB application. *See Stevenson*, 105 F.3d at 1154. "[I]f she was not disabled by then, she cannot obtain benefits even if she is disabled now . . . ." *Martinez v. Astrue*, 630 F.3d 693, 699 (7th Cir. 2011) (citing 42 U.S.C. § 423(c); 20 C.F.R. § 404.140). "In the brief but critical window (because of the expiration of her insurance coverage) between the time before her diseases were brought under control and the time that they [allegedly] flared up again, she was not disabled." *Id.*

One piece of medical record, however, merits discussion. Eller cites to an emergency department visit dated March 18, 2014, at St. Joseph Hospital—a month after the February 2014 Bowen Center note cited by the ALJ—to show that her symptoms had returned. (ECF 12 at 12). This note reflects that Eller presented to the emergency department "with complaints of low back pain" and that she was "having back pain for quite some time that became acutely worse over the last several days." (AR 555). According to the note, she had "also been complaining of some increasing anxiety and depression," and requested to be evaluated for it. (AR 554-55). Those problems started ten days before her hospital visit, with her back pain increasing the week preceding her visit and a pain level during the visit at 7/10 intensity. (AR 555). She was listed as having acute low back pain and anxiety. (AR 554). She reported severe depression that is

---

[13] The ALJ also discussed evidence from January 2014 as it relates to other portions of her conclusions. (AR 1620).

"intolerable." (AR 553). She presented with depression and an inability to sleep and arrived voluntarily for a psychiatric evaluation. (AR 552). Eller was not in acute distress, her mood and affect were normal, and according to the nurse, she was feeling much better, did not appear anxious, in distress, or tearful, and her overall condition had improved since her arrival at the emergency department. (AR 553-55). Her condition at discharge was "stable." (AR 557). Eller did not meet inpatient criteria, but was told that she had an anxiety or panic attack and that she could follow up as an outpatient with Bowen Center. (AR 555, 558).

As discussed, the ALJ mentioned this hospitalization record but noted it occurred after Eller's last date insured. (AR 1615). While this medical record occurred relatively close in time to the February 2014 record cited by the ALJ, the Court is not convinced that the failure to consider this evidence constitutes reversable error.

First, it appears the ALJ only cited the February 2014 Bowen Center note because she relayed Dr. Andert's medical analysis rather than selected post-last date insured evidence to support her conclusion. (AR 1625 ("Dr. Andert testified [Eller's] symptoms waxed and waned, and his testimony appears consistent with . . . evidence that he addressed during the hearing, from February 2014, . . . where the claimant was doing well and did not report any psychiatric problems." (citing AR 542-44)). To that end, it does not appear the ALJ cited post-December 31, 2013, evidence to support her conclusion while ignoring other evidence contrary to the RFC determination. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) ("The ALJ must evaluate the record fairly. Thus, although the ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." (citations omitted)); *see also John B. v. Saul*, No. 2:18-cv-00223-JVB-JEM, 2019 WL 4233744, at *2

16

(N.D. Ind. Sept. 5, 2019). Instead, it appears the ALJ simply expanded on Dr. Andert's analysis.[14]

Second, the Court doubts this evidence holds probative value over Eller's need for absences while she was eligible for DIB. Indeed, the March 2014 emergency department note Eller cites suggests her desire for a psychiatric evaluation was secondary to her "acute" pain which had been worsening in the preceding days of her hospital visit. Additionally, the hospital note says nothing about Eller's need for unscheduled breaks. *Schloesser v. Berryhill*, 870 F.3d 712, 719 (7th Cir. 2017) ("Even assuming these records from two years after his date last insured are relevant, Schloesser still did not complain of shoulder or neck pain and much of the focus of his visits remained his lower back pain."). In any event, "it is evident from the ALJ's decision that she did not fail to consider this evidence, but instead she examined it as required and subsequently concluded that the evidence was irrelevant, because it did not address the correct time period." *Eichstadt v. Astrue*, 534 F.3d 663, 667 (7th Cir. 2008) (internal quotation marks omitted).

All in all, even assuming the ALJ erred in failing to consider the March 2014 hospital records and later evidence of Eller's recurring nightmares, it does not disturb the ALJ's conclusion that "[w]hile bad dreams apparently resumed by December 4, 2013, the evidence does not confirm they persisted for 12 continuous months into the future," given the February 2014 Bowen Center report. (*See* AR 1621). Therefore, the Court will not remand on this basis either.

---

[14] To the extent Eller argues the ALJ cherry-picked post-date last insured evidence, the ALJ also utilized a January 2014 report to support greater restrictions in Eller's ability to understand, remember, or apply information, further undermining any claim that the ALJ cherry-picked the record. (AR 1619).

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED. The Clerk is DIRECTED to enter a judgment in favor of the Commissioner and against Eller.

SO ORDERED.

Entered this 13th day of August 2024.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge
